## RENDLEMAN v. UNITED STATES.
### No. 5881.

Circuit Court of Appeals, Ninth Circuit.
March 10, 1930.

Warren Hardy, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Jeffrey Heiman, Asst. U. S. Atty., both of Seattle, Wash.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

DIETRICH, Circuit Judge.

The appellant was convicted on an indictment charging him, in two counts, with the violation of two different provisions of the Harrison Anti-Narcotic Act (26 USCA §§ 211, 691–707). The only point he seriously argues is that the trial court should have directed the jury to acquit. Specifically his contention is that the evidence is wholly circumstantial, and that it does not measure up to the requirement that, where the government relies upon circumstantial evidence alone, it must be such as to exclude every reasonable hypothesis other than that of guilt, and that the facts proved must not only point to the defendant's guilt, but must be inconsistent with the theory of his innocence. Union Pacific Coal Co. v. United States (C. C. A.) 173 F. 737; Nosowitz v. United States (C. C. A.) 282 F. 575, 578.

It was shown on behalf of the government that, suspecting appellant was engaged in the sale of narcotics, narcotic agents arranged with an addict by the name of Fadden to make a purchase under circumstances where they could observe what was done. Accordingly, on the evening of December 11, 1925, three of them went with Fadden to a place in Seattle apparently remote from the more populous sections of the city, there searched him to see that he had no narcotics on his person, and gave him $20 in marked money with which to make a purchase. They concealed themselves behind a high bank and about 7 o'clock the defendant drove up in a Studebaker car near the place where Fadden and another man by the name of McGee, who apparently was also an addict, were standing. This was about 100 feet from where the agents were concealed. McGee first spoke to the defendant, who remained in the car. Then both he and Fadden stepped close to the car. What was said the agents did not hear, but they observed that the hand of appellant which was thrust out from the car and the hand of Fadden "met." Appellant then drove off, and in about twenty minutes came back and stopped at practically the same place. Both Fadden and McGee again stepped up close to the car. One of the

agents testified: "I saw a hand come out of the car and meet the hand of the man who was not known to me. He stepped back and the informant stepped up. I saw the hand come out of the car and hand Fadden something and he took it and stepped back. We started to run in the direction of the car." In some detail the agents testified of their difficulty in getting into the car as it moved away rapidly; how it was stopped about a block away; that appellant alone was in the car; that, upon arresting and searching him, they found upon his person the marked money they had given Fadden. They further testified that, upon searching the ground where Fadden stood at the times he dealt with appellant, they found a package containing fifty grains of morphine, and on the seat in the car they found a piece of some kind of cloth which was so creased as to indicate that it had been wrapped around such a package.

 If the jurors believed the testimony of the agents, as of course they had a right to do, they could hardly escape the conclusion involved in their verdict. It would not be so much a question whether fair-minded men could reasonably reach such conclusion, but whether they could reasonably avoid it.

True, the appellant offered testimony by which he attempted to explain away the apparently incriminating character of the circumstances. His story, measurably corroborated by his wife and another witness, is that two or three weeks prior to the occurrence he had loaned to Fadden some money which he had failed to repay as promised; that some time during the day of the occurrence in question Fadden telephoned him that, if he would meet him, he would repay the money; and that, pursuant to this understanding, he drove to the place where the occurrence took place for that purpose. He does not deny that he had the marked money on his person, but claims that he received it innocently, assuming that it was what Fadden had agreed to pay him. But the jury was not bound to believe his story; indeed we are inclined to think that few intelligent men would believe it. Straight business transactions are not ordinarily carried on under circumstances such as surrounded this occurrence. To say the least, it would be unusual for a creditor to drive to a lonely place on a dark, rainy night to receive a small amount of money from his debtor and to drive there not once, but twice, and meet his debtor under the conditions here shown. It is to be added that the appellant did not tell this story at the time of his arrest, and he had ample time to con-

coct it after he became aware of the exigencies he must meet in explaining away the incriminating circumstances.

He also produced as a witness Fadden, who was at the time of the trial serving a sentence in a federal prison. Fadden conceded that he threw the package of morphine upon the ground, but claimed that he had procured it from another addict and that appellant had given him nothing. But it would scarcely be contended that the jury was bound to believe his testimony.

In applying the rule which appellant invokes, if the circumstances are not all admitted, the court must assume them to be such as the jury, acting reasonably and considering the testimony in the most favorable light to the government, might have found them to be. Neither a trial nor an appellate court can, in the guise of such a rule, invade the province of the jury touching the credibility of witnesses and the inferences to be drawn from the testimony where different inferences may reasonably be drawn.

Affirmed.